# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TAMMY ELIX, o/b/o JE (minor), ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ) <br> **Acting Commissioner of the** ) <br> **Social Security Administration,** ) <br> ) <br> **Defendant.** ) | Case No. CIV-13-139-HE |

## REPORT AND RECOMMENDATION

Plaintiff, Ms. Tammy Elix, brings this action on behalf of her minor son, J.E., pursuant to 42 U.S.C. § 405(g). Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application, based on J.E.'s alleged disability, for supplemental security income ("SSI") benefits under the Social Security Act.

The Administrative Law Judge ("ALJ") who decided the case determined that J.E.'s impairments – including borderline intellectual functioning and Attention Deficit Hyperactivity Disorder ("ADHD") – did not meet, medically equal, or functionally equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). However, the record indicates that the ALJ did not properly consider whether J.E. met Listing 112.05(D), which specifies criteria for a particular intellectual functioning disability. Specifically, the ALJ deemed invalid a set of tests that placed J.E.'s IQ within the range required for Listing 112.05(D), stating that J.E. "likely"

had not taken his ADHD medication on the day of testing and finding the results unreliable because they were lower than those from a prior set of tests. R. 18.[1] Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge recommends that the decision of the Commissioner be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## PROCEDURAL HISTORY

J.E. was born on December 6, 2000. R. 16. Plaintiff protectively filed an application for SSI on July 31, 2008. *Id.* Following preliminary administrative denials of his application, Plaintiff and J.E. appeared and testified at a hearing before an ALJ on June 28, 2010. *Id.* at 13, 61, 74, 31-56. The ALJ issued an unfavorable decision on September 14, 2011. *Id.* at 10-27. Plaintiff's request for review by the SSA Appeals Council was denied; thus, the decision of the ALJ is the final decision of the Commissioner. *Id.* at 1-6; *see* 20 C.F.R. § 416.1481.

Thereafter, Plaintiff commenced this appeal. The matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b). The Commissioner has answered and filed the administrative record, and the parties have briefed their positions. Thus, the matter is now ready for decision.

## THE ADMINISTRATIVE DECISION

The ALJ followed the three-step sequential evaluation process established by the SSA for determining whether minor children are disabled. *See* 20 C.F.R. § 416.924(a). At

---
[1] References to the administrative record, Doc. No. 11, are as "R. ___."

step one, the ALJ found that J.E. had not engaged in substantial gainful activity since the date the application was filed. R. 16. At step two, the ALJ found that J.E. has severe impairments including borderline intellectual functioning, ADHD, chronic bronchitis, and a learning disability in reading. *Id.* Further, the ALJ found that J.E. has a non-severe impairment of restless leg disorder during sleep. *Id.*

At step three, the ALJ found that J.E. did not have an impairment or combination of impairments that met or medically equaled one of the presumptively disabling impairments set forth in the Listings. *Id*. at 18. The ALJ then considered J.E.'s ability to function in the six domains set forth in the regulations. *Id*. at 19-27; *see* 20 C.F.R. §§ 416.924(d), 416.926a. Specifically, the ALJ assessed J.E.'s functioning as follows:

| | |
|---|---|
| Acquiring and Using Information- | marked functional limitations |
| Attending and Completing Tasks- | less than marked functional limitations |
| Interacting/Relating with Others- | less than marked functional limitations |
| Moving About/Manipulating Objects- | no functional limitations |
| Caring for Yourself- | less than marked functional limitations |
| Health and Physical Well-Being- | less than marked functional limitations |

R. 20-27. Because functional equivalence for children requires a marked limitation in two or more domains, or an extreme limitation in one domain, the ALJ determined that J.E. did not have an impairment or combination of impairments that functionally equaled any of the Listings. R. 27.

Based on his step-three conclusion, the ALJ found that J.E. was not disabled within the meaning of the Act. *Id*. Accordingly, Plaintiff's application for SSI was denied. *Id.*

3

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ISSUES PRESENTED ON APPEAL

Plaintiff raises three claims of error on appeal. First, Plaintiff contends the ALJ erred at step three by failing to properly evaluate whether J.E.'s impairments met or medically equaled Listing 112.05(D), Listing 112.05(E), and Listing 112.11(A). Pl.'s Br., Doc. No. 17, at 11-14. Second, Plaintiff contends that substantial evidence does not

support the ALJ's step-three finding that J.E. has less than marked limitations in the domain of Attending and Completing Tasks. *Id.* at 14-16. Finally, Plaintiff contends the ALJ erred in evaluating the weight to be given to the opinion of Dr. Jennifer Morris. *Id.* at 7-10.

ANALYSIS

To meet the criteria for mild mental retardation at Listing 112.05(D), a claimant must demonstrate:

> A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function[.]

20 C.F.R. pt. 404, subpt. P, App. 1, § 112.05(D). Here, as detailed below, the record includes testing by Jennifer L. Morris, Ph.D., that places J.E.'s IQ within the specified range of Listing 112.05(D). These test results, combined with the ALJ's conclusion that J.E. has an additional severe mental impairment in the form of ADHD, required analysis of whether J.E. met or medically equaled Listing 112.05(D).

The record reflects IQ testing of J.E. by two psychologists: (1) a July 14, 2008 evaluation by Stephen Scott, Ph.D. (R. 203-207); and (2) a September 2, 2009 evaluation by Dr. Morris (*id.* at 264-274). The testing and results are discussed in turn.

Dr. Scott – on or around July 14, 2008, when J.E. was 7 years, 7 months old – administered a battery of tests, including the Conners' Continuous Performance Test, 2nd ed. (CPT-II); the Wechsler Intelligence Scales for Children, 4th ed. (WISC-IV); the Wide Range Achievement Test, 4th ed. (WRAT-IV); the Beck Youth Inventories, 2nd ed.; and a Projective Drawings Assessment. R. 203. Dr. Scott noted that J.E. "appeared to be invested

5

in giving his best effort and generally followed through with tasks to completion with minimal encouragement." *Id.* at 204. Dr. Scott noted that J.E. began to tire and to lose attention near the end of the session, but was "easily directed and benefited from a short break." *Id.*

Dr. Scott concluded that J.E.'s test performance on the WISC-IV placed him in the "[b]orderline range of intellectual functioning." *Id.* at 205. He assessed a full-scale IQ score of 78. *Id.* J.E.'s performance on the WRAT-IV, according to Dr. Scott, was two standard deviations below the work of his age-related peers. *Id.* Dr. Scott provided a provisional diagnosis of Attention-Deficit/Hyperactivity Disorder, Combined Type and a diagnosis of Borderline Intellectual Functioning. R. 206. Further, Dr. Scott diagnosed J.E. as having a global assessment of functioning ("GAF") of 55 and an impression of anxiety. *Id.* at 206-07.

Dr. Morris evaluated J.E. on or around September 2, 2009, when J.E. was 8 years, 8 months old. *Id.* at 264. Like Dr. Scott, Dr. Morris administered the WISC-IV, the CPT II, and the WRAT-IV. *Id.* Additionally, Dr. Morris administered the Beery-Buktenica Developmental Tests of Visual-Motor Integration, 5th ed. ("Beery VMI"); the Child Behavior Checklist for Ages 6-18 ("CBCL"); and a Sentence Completion for Children assessment. *Id.* Unlike Dr. Scott, she did not administer the Beck Youth Inventories or a Projective Drawings Assessment. *See* R. 264. Dr. Morris stated that "[d]uring the evaluation, [J.E.] exhibited inattention, excessive talking, and fidgeting, though he was generally cooperative." *Id.* at 271. She further stated that "[b]ecause of [J.E.'s] inattention,

6

the results of the current evaluation may be a slight underestimate of his true psychological and intellectual functioning." *Id*. at 267.

Dr. Morris concluded that J.E.'s test performance on the WISC-IV placed him in the "Extremely Low range of general intellectual functioning for his age." *Id*. She assessed a full scale IQ score of 62 and a verbal comprehension score of 69. *Id*. She further assessed J.E.'s "verbal reasoning, short-term memory, and processing speed scores [as all being] within the Extremely Low range." *Id*. at 271. Dr. Morris concluded, "a diagnosis of Borderline Intellectual Functioning is appropriate at this time, though the current scores suggest that he may be exhibiting symptoms of mental retardation." R. 271. Further, Dr. Morris stated that J.E.'s performance on the CPT-II demonstrated "a significant attention problem, with a score indicating 83% likelihood of a clinical problem." *Id*.

In her decision, the ALJ deemed invalid the IQ test results from Dr. Morris. R. 18. This conclusion was based on two stated reasons: (1) "As the claimant likely was not using his medication on the day of the evaluation (similar to the day of the hearing), his inattention appeared to be greater and his scores on testing were lower;" and (2) "the claimant scored higher on the same intelligence test, fifteen months earlier." *Id.*

The ALJ's speculation as to lack of medication during testing is not supported by substantial evidence. There is no fact of record that would allow that conclusion. The question of whether the IQ test results were affected by J.E.'s inattentiveness is not trivial, but the medical professional who administered the tests did not consider them invalid. Rather, Dr. Morris stated that J.E.'s inattentiveness might have had a "slight" effect on test results. *Id.* at 267. There is no substantial evidence in the record that would allow the ALJ

7

to deem these test results invalid when Dr. Morris did not. The slight effect described by Dr. Morris would not be significant given that J.E.'s full scale IQ score of 62 is at the low end of the range required for Listing 112.05(D).

Further, the drop in IQ scores between Dr. Scott's and Dr. Morris' evaluations is not reason, in and of itself, to find the latter scores invalid. The SSA's regulations regarding IQ testing of children place preference on the more recent results and, indeed, in this case indicate that Dr. Scott's results were at least on the border, and perhaps over the line, of being too old to be considered. The pertinent regulation states as follows:

> IQ test results must also be sufficiently current for accurate assessment under 112.05. Generally, the results of IQ tests tend to stabilize by the age of 16. Therefore, IQ test results obtained at age 16 or older should be viewed as a valid indication of the child's current status, provided they are compatible with the child's current behavior. IQ test results obtained between ages 7 and 16 should be considered current for 4 years when the tested IQ is less than 40, and for 2 years when the IQ is 40 or above.

20 C.F.R. pt. 404, subpt. P, App. 1, § 112.00(D)(10). Here, J.E.'s IQ scores were above 40 and, therefore, would be considered "current" only if obtained less than 24 months prior to the Commissioner's decision. The July 14, 2008 testing by Dr. Scott occurred 23½ months prior to the June 28, 2010 hearing, and 38 months prior to the September 14, 2011 decision. The September 2, 2009 testing by Dr. Morris occurred 10 months prior to the hearing, and 24½ months prior to the decision. The ALJ's reliance on Dr. Scott's testing, to the exclusion of the more recent testing by Dr. Morris, was misplaced. At the very least, given that both sets of tests were no longer current by the time of the ALJ's decision (Dr. Scott's substantially so and Dr. Morris' just over the line), there should be additional IQ testing

8

before the Commissioner decides that J.E.'s mental impairment does not meet or medically equal Listing 112.05(D).[2]

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge recommends that the decision of the Commissioner be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by March 5, 2014. The parties further are advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

---

[2] In light of this conclusion, the undersigned need not consider the remaining issues on appeal raised by Plaintiff. If the recommendation is adopted, and the matter remanded for further proceedings, the Commissioner should comply with all applicable laws, regulations, and rules in deciding whether J.E. is disabled for purposes of the Act.

ENTERED on this 19th day of February, 2014.

*[signature: Charles B. Goodwin]*

CHARLES B. GOODWIN  
UNITED STATES MAGISTRATE JUDGE